UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DEONTE JEFFERSON,
   Petitioner,
           vs.
UNITED STATES OF AMERICA,
   Respondent.

| Civil case No. 04-2164
| Petitioner's Motion to
| Reconsider Alter or Amend

FILED
NOV 0 8 2004
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

<u>Petitioner's Motion to Reconsider pursuant to Rule 59(e)</u>

Comes Now, Deonte Jefferson, without the aid or benefit of counsel to request this Honorable Court to reconsider its 26 October Order denying relief as it was based on a mistake of law and fact. Pet- offers the following suggestions:

   1) The civil rules allow for a court to reconsider, alter or amend its judgment if a party can demonstrate that decision is based on a mistake of law or fact. On Petitioner's first point, the Court has relied on the absence of a "racial" motive or proof that the AUSA is a card-carrying member of the local Klu-Klux Klan. Unconstitutional motives, such as race or religion, are not the only impermissible reason a court may intervene when the prosecution refuses to move for a downward departure, as promised. Petitioner correctly cited several cases which court of appeals have determined that the Court may intercede and is **obligated to hold an evidentiary hearing** when there is a possible claim of "bad faith", obstinence and lack of integrity. Therefore, because, the Court denied an evidientart hear- ing because Petitioner failed to prove or allege an "unconstitutional motive, the Order's reasoning of law may now be reconsidered to ensure an injustice does not take place.

   2) The Supreme Court has affirmed this "bad faith" exception which has long preceeded the inapplicable case relied on by the Court when it looked only for a racial motive in **Wade v. US**(order p. 4). In **City of New Orleans v. Duke, 49 Led2d 511(1976)** the prohibitions against using race, relgion or a bad faith reasoning such as they "must be rationally related to a legitmate government end"(p. 517)

1

were cited as impermissible reasons for a government agency's policies, regulations and or laws.  Likewise in the context of the US Attorney's Office's policy, regulations and reasonings for NOT filing a departure motion for assistance "must ne rationally related to a legitimate government end" **Duke**, supra.  There can be no legitimate end served in this circumstance.  The Government and its law enforcement agencies thrive and draw its lifeblood from cooperating individuals like Petitioner.  A comprehensive reading of the order may even support that fact that Judge McCuskey is saying that because there "is no plea agreement"(Order p. 3) Petitioner is just out-of-luck.  That statement, by itself, proves petitioenr's other claim that he was deprived of his Sixth Amendment right to counsel when Ms. Hurst did not put the cooperation agreement into written form.

3)  Indeed, **Wade** did embrace and recogonize that a district court may review the government's refusal "if the prosecutor's refusal to move was not **rationally related to any legitimate Government end**" @ 118 Led2d @ 531.  The notion that the government is absolved of bad faith review when their has been no written agreement only evinces a premeditated plan to coerce Jefferson cooperation with no intent to depart.  The Government used **Lezine** and the Court affirmed, but the case facts are completely contrary to Jefferson's situation and facts.  In lezine, the defendant made numerous false statements that were in violation of his duty to provide "complete and thruthful cooperation".  Yet, the government cannot, nor do they suggest that Jefferson or his girlfriend, Latoya have given false information or been resistent in their dealing with Agents Rutledge, Espinoza and other of Task Force X.  It is an abuse of discretion to use Lezine as the controlling authority to deny Jefferson an evidentiary hearing in this matter.

4)  Jefferson has a constitutional right to due process in this scenario and that rights implies an evidentiary hearing when there are genuine issues of material fact inovled and presented in the record.

In fact, this issue could easily be resolved by a hearing where Ms. Tiffani Johnson[Hurst] could testify as to what she told Jefferson the copperation deal actual was. Jefferson properly advised the Court of his potential witnesses and what they could testify to, but the Court unilaterally decided this issue against Jefferson in violation of his right to due process. Attorney Johnson has refused telephone calls from Latoya and the government has failed to obtain an affidavit refuting Jefferson and Latoya's testimony(Latoya filed an affidavit with the Clerk of the Court-now attached by Jefferson). Ms. Johnson also gave oral assurances to Jefferson's step father but the refusal to convene a hearing is depriving Jefferson of that key witness.

5) Ironically, in another misstep, Jefferson requested the transcripts of the hearing whereby AUSA Bass promised to depart, yet the Court refuses an indigent those records in violation of his rights to due process. In the government response, AUSA Bass affirms this issues rests with whatever Jefferson was told by his attorney and yet Bass admits a vague admission that he "may have indicted that he would consider... a consideration is far different that a promise" (G r. p5). This is the exact reason counsel should be appointed to neet with Ms. Johnson and get the records, not because this is a com½plex legal proceeding, but that Jefferson is being taken advantage of as a poor blackman without the resources to have the truth revealed. On second thought, maybe the unconstitutional motives are just now coming into the light. Because Jefferson is poor and Black he is definately getting treatment that a rich white man would be protected from. The government failed to obtain an affidavit from Agent Rutledge affirming that he NEVER used Jefferson or his girl- friend's information. It is the Government who has failed to overcome its burden. Jefferson now requests the Court to reconsider its order which discriminates against a poor black person and **order an evidentiary hearing** as there are too many contested issues of material fact to deny him the requested relief.

Signed: *Deonte Jefferson* 11-03-04
Deonte Jefferson
PO Box 4000 FMC Rochester   MN

3

August 27, 2004

Re: Deonte M. Jefferson
Case Number 2:04-CVD-2164

To Whom It May Concern:

I Latoya R. Sanford met with Don Espinoza either late September or early October. I gave him valuable information on Tony better known as "Butter and Arby better known as Quentin. In the meeting, I told Mr. Espinoza Quentin and Butter is drug affiliated and they had several guns in there home.
I gave Don Espinoza details about them cooking and packaging the drugs in there home. I also told him about several transactions I witness. I told him where they kept the guns and the drugs. He said the information I provided should help Deonte M. Jefferson; especially if they found the guns and drug in there home. I also told him that Butter was making another trip to Chicago shortly to buy more drugs.

Several weeks later Tony better known as "Butter was arrested and I know one of the charges he was charge with was a gun charge. I contacted Don Espinoza and he said the information I provided them was not used. I continued to contact Mr. Espinoza and Mrs. Hurst to see if the information was going to be used for Mr. Jefferson downward departure. I also contacted them every time Mr. Jefferson wanted to speak with them.

Latoya R. Sanford

I, Latoya R. Sanford swear this information is true.